**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MATTHEW MORRISON**                                    Case No.
                                                        Hon.
                        Plaintiff,

v.

**IHRONE INC., LGC GLOBAL, INC.,**
and **LGC GLOBAL ENERGY FM, LLC,**
Jointly and Severally,

                        Defendants.

---

Adam M. Taub (P78334)
Croson, Taub, & Michaels, PLLC
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

---

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

There is no other pending or resolved civil
action arising out of the transactions or
occurrences alleged in the Complaint.

Plaintiff Matthew Morrison, by and through his attorneys, Croson, Taub, &

Michaels, PLLC, hereby alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    This is an action for retaliation under the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201, *et seq.*, the Michigan Whistleblower Protection Act

("WPA"), MCL § 15.361, *et seq.*, and the Michigan Prevailing Wages on State

Projects Act ("PWSPA"), MCL § 408.1101, *et seq.*, and for wrongful termination in violation of Michigan public policy.

2.     Plaintiff Matthew Morrison is an individual residing in Webberville, Michigan in Ingham County.

3.     Defendant IHRONE Inc. is a domestic profit corporation with a registered business agent in Troy, Michigan in Oakland County. Defendant has a registered office in Detroit, Michigan in Wayne County.

4.     Defendant LGC Global, Inc. is a domestic profit corporation with a registered office in Detroit, Michigan in Wayne County.

5.     Defendant LGC Global Energy FM, LLC is a domestic limited liability company with a registered office in Detroit, Michigan in Wayne County.

6.     Defendants IHRONE Inc., LGC Global, Inc., and LGC Global Energy FM, LLC are collectively referred to herein as "Defendants" or "LGC Global". Defendants were joint employers of Plaintiff because they maintained sufficient control over the essential terms and conditions of his employment, including but not limited to having a common Human Resources Department, employment policies, and management structure.

7.     At all times relevant hereto, Plaintiff performed work for Defendant in the Eastern District of Michigan.

8.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal

2

question jurisdiction).

9.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims. The pendant claims are part of the same case or controversy. They do not substantially predominate. They do not raise novel or complex issues. Therefore, exercise of jurisdiction is proper.

10.     Venue is proper in this Court because Defendants obligated themselves to Plaintiff within the Eastern District of Michigan, Plaintiff was employed by Defendants within the Eastern District of Michigan, and the actions giving rise to this lawsuit occurred within the Eastern District of Michigan.

11.     Defendants are an employer and Plaintiff was an employee within the meaning of the FLSA and the WPA. Furthermore, Defendants are a "private contracting agent" and Plaintiff was a "construction mechanic" as defined by the PWSPA.

### STATEMENT OF FACTS

12.     In part, LGC Global provides labor for construction projects, including contracts on public works with federal, state, and local governmental entities.

13.     As such, on a number of projects LGC Global worked on, employees were entitled to a minimal rate of pay at the applicable federal or state prevailing wage rate. *See* 40 U.S.C. § 3141, *et seq.*; MCL § 408.1101, *et seq.*

14.     Plaintiff began working for Defendants in or about March 2019 as a Heavy Equipment Operator. He was eventually promoted to an Operator and Foreman.

15.     At all times relevant hereto, Plaintiff performed his job diligently and competently and was well-qualified for the positions he held.

16.     Throughout his employment Plaintiff received compensation on a per hour basis.

17.     Plaintiff received no benefits through Defendants.

18.     When working on contracts that should have been covered under relevant prevailing wage laws, Plaintiff did not actually receive the prevailing wage for his position.

19.     Additionally, while Plaintiff did receive a premium for his work in excess of forty (40) hours in a week, the premium was less than one-and-a-half times his regular rate of pay.

20.     Early into his employment, when Plaintiff first noticed that his overtime premium was less than time-and-a-half, he questioned management about the reason for his overtime rate. Defendants claimed that it was related to benefits Plaintiff received, but Plaintiff did not receive any benefits.

21.     Nonetheless, Plaintiff needed the job and continued to work despite his belief that his pay rate was incorrect.

22.     Throughout the years, Plaintiff complained again about his overtime rate and also alleged that he was not receiving the prevailing wage on projects in which it applied. Managers told Plaintiff that they would look into it, and although nobody ever got back to him, Plaintiff would let it go due to his need for continued employment.

23.     In or around July or August 2025, Plaintiff escalated his complaints. At that time, he informed managers that if something was not done to resolve the overtime and prevailing wage violations, he or someone else would file a complaint with the United States Department of Labor ("DOL").

24.     Defendants, however, continued paying Plaintiff at the same rates.

25.     As a result in or about September 2025, Plaintiff contacted the DOL to formally complain about not being paid the correct prevailing wage rate and overtime premium.

26.     Plaintiff informed numerous employees of Defendants that he had filed a complaint with the DOL, including a Project Manager and Engineers.

27.     Defendants had actual or constructive notice that Plaintiff reported what he reasonably believed to be a violation of the law to the DOL, including complaints regarding underpaid overtime.

28.     On or about December 5, 2025, Defendants terminated Plaintiff's employment, claiming that he left work early without permission.

29.     In reality, Plaintiff was terminated because of his complaint to the DOL and his opposition to receiving an incorrect overtime premium and less than the prevailing wage.

30.     While Plaintiff did leave work early on December 5th, it was an accepted practice to do so.

31.     Plaintiff accurately reported his time, informed his crew that he was leaving, and made sure that the work would be able to continue without issue in his absence.

32.     Plaintiff had done so in the past and had received no warnings or discipline for doing so.

33.     Furthermore, similarly-situated employees engaged in the same or similar behavior as Plaintiff, but they were not disciplined.

34.     Defendants terminated Plaintiff for behavior they regularly tolerated because of Plaintiff's protected activity.

## COUNT I
## FAIR LABOR STANDARDS ACT RETALIATION

35.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

36.     At all times relevant hereto, Plaintiff was an employee, and Defendant was her employer under the definitions contained in the FLSA, 29 U.S.C. §§ 203(d), (e).

37. Section 215(a)(3) of the Fair Labor Standards Act (FLSA) provides that "it shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act . . . ." 29 U.S.C. § 215(a)(3).

38. Plaintiff engaged in protected activity by asserting his rights under the Act on numerous occasions to his supervisors and managers.

39. Defendants knew about Plaintiff exercising his rights based on several verbal conversations with Plaintiff and had constructive notice through conversations with others.

40. Defendants subjected Plaintiff to adverse employment actions, including, but not limited to, the termination of his employment.

41. Defendants subjected Plaintiff to disparate treatment because of his protected activity. Such acts include but are not limited to the termination of Plaintiff's employment.

42. Defendants' actions in violation of the FLSA were willful.

43. Defendants' actions were motivated by unlawful retaliation against Plaintiff because of his protected activity.

44. But for Plaintiff's protected activity, he would not have been terminated by Defendants.

45.     As a direct and proximate result of Defendants' violation of the FLSA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and will so suffer in the future.

46.     As a further direct and proximate result of Defendants' violation of the FLSA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT II
## MICHIGAN WHISTLEBLOWER PROTECTION ACT RETALIATION

47.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

48.     At all relevant times, Defendants were an employer, and Plaintiff was an employee covered by and within the meaning of the Whistleblower's Protection Act ("WPA"), MCL § 15.361.

49.     Defendants' failure to pay Plaintiff the correct rates of pay for prevailing wage and overtime was a violation or suspected violation of law.

50.     Plaintiff engaged in protected activity under MCL § 15.362 when he reported Defendants' above-described conduct, which he reasonably believed violated the law, to the DOL.

51. Defendants had actual or constructive notice of Plaintiff's protected activity as outlined above.

52. Defendants retaliated against Plaintiff because of his protected activity in violation of the WPA by, *inter alia*, terminating his employment.

53. Defendants' actions were motivated by unlawful retaliation against Plaintiff due to his protected activity.

54. But for Plaintiff's protected activity, Defendants would not have subjected Plaintiff to such adverse actions.

55. Defendants' violation of the WPA was willful.

56. As a direct and proximate result of Defendants' violation of the WPA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

57. As a further direct and proximate result of Defendants' violation of the WPA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT III
## MICHIGAN PREVAILING WAGES ON STATE PROJECTS ACT
## <u>RETALIATION</u>

58.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

59.     At all relevant times, Defendants were a "private contracting agent" and Plaintiff was a "construction mechanic" as defined by the PWSPA. MCL § 408.1101(b), (i).

60.     Under MCL § 408.1107, "A contractor or subcontractor shall not discharge, discipline, retaliate against, or otherwise discriminate against a construction mechanic, or threaten to do any of these things, because the construction mechanic reported or was about to report a violation or suspected violation of this act."

61.     Furthermore, MCL § 408.1119 permits an employee "who believes they have been discharged, disciplined, or otherwise experienced a detrimental change in their employment status due to filing a complaint, participating in an investigation, or having raised concerns with their payment of wages and fringe benefits covered by this act with their employer" to file a complaint with the Department of Labor and Economic Opportunity.

62.     Plaintiff engaged in protected activity by asserting his rights under the Act on numerous occasions to his supervisors and managers.

10

63.     Defendants knew about Plaintiff exercising his rights based on several verbal conversations with Plaintiff and had constructive notice through conversations with others.

64.     Defendants subjected Plaintiff to adverse employment actions, including, but not limited to, the termination of his employment.

65.     Defendants subjected Plaintiff to disparate treatment because of his protected activity. Such acts include but are not limited to the termination of Plaintiff's employment.

66.     Defendants' actions in violation of the PWSPA were willful.

67.     Defendants' actions were motivated by unlawful retaliation against Plaintiff because of his protected activity.

68.     But for Plaintiff's protected activity, he would not have been terminated by Defendants.

69.     As a direct and proximate result of Defendants' violation of the PWSPA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and will so suffer in the future.

70.     As a further direct and proximate result of Defendants' violation of the PWSPA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of his earning capacity and ability to work, and

will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

**COUNT IV**
**<u>WRONGFUL TERMINATION IN BREACH OF PUBLIC POLICY</u>**

71. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

72. On or about December 5, 2025, Defendants wrongly terminated Plaintiff in contravention of clearly settled public policy in Michigan.

73. Defendants retaliated against Plaintiff and terminated Plaintiff for his reports concerning Defendant's failure to pay him (and others) the correct State prevailing wage rate.

74. As described above, Plaintiff's termination was in illegal retaliation of Plaintiff's exercise of a right conferred by a well-established legislative enactment. *See* MCL §§ 408.1107, 408.1119.

75. Defendants, in bad-faith, wrongfully, maliciously, and intentionally terminated Plaintiff's employment, causing him to be humiliated in the process.

76. Defendant's termination of Plaintiff has caused significant economic and emotional hardship.

77. As a direct and proximate result of Defendant's wrongful termination in violation of Michigan's public policy, Plaintiff has suffered emotional and physical

12

distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and will so suffer in the future.

78. As a further direct and proximate result of Defendant's wrongful termination in violation of Michigan's, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, **MATTHEW MORRISON**, requests that this Honorable Court grant the following relief:

a. Declare the practices and actions of Defendant as unlawful employment practices in violation of the FLSA, the WPA, the PWSPA, and Michigan public policy;

b. Compensatory damages for monetary and non-monetary loss in whatever amount he is found to be entitled;

c. Exemplary damages in whatever amount he is found to be entitled;

d. Punitive damages in whatever amount he is found to be entitled;

e. A judgment for lost wages and benefits, past and future, in whatever amount he is found to be entitled;

f. Liquidated damages in an amount equal to his lost wages and benefits;

g. An order of this Court reinstating Plaintiff to the position he would have if there had been no wrongdoing by Defendant;

13

h.  An injunction of this Court prohibiting any further acts of retaliation by Defendant;

i.  An award of interest, costs and reasonable attorney fees; and

j.  Whatever other equitable relief this Court finds appropriate.


Respectfully Submitted,
CROSON, TAUB, & MICHAELS, PLLC


/s/ Adam M. Taub_____
Adam M. Taub (P78334)
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

Dated: March 3, 2026

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MATTHEW MORRISON**                                    Case No.
                                                        Hon.
                    Plaintiff,

v.

**IHRONE INC., LGC GLOBAL, INC.,**
and **LGC GLOBAL ENERGY FM, LLC,**
Jointly and Severally,

                    Defendants.

---

Adam M. Taub (P78334)
Croson, Taub, & Michaels, PLLC
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

---

## **DEMAND FOR TRIAL BY JURY**

**NOW COMES** Plaintiff, **MATTHEW MORRISON**, by and through his attorneys, **CROSON, TAUB, & MICHAELS, PLLC**, and hereby demands a trial by jury, for all issues so triable.

2

Respectfully Submitted,
CROSON, TAUB, & MICHAELS, PLLC


/s/ Adam M. Taub_____
Adam M. Taub (P78334)
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

Dated: March 3, 2026

2